UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


JOLLEE LENHART, on her own behalf
and as power of attorney for
TAMARA OUSLEY,

        Plaintiffs,

v.                                    Civil Action No. 2:12-cv-4184

BANK OF AMERICA, N.A. and
EVERHOME MORTGAGE COMPANY and
JOHN DOE HOLDER,

        Defendants.


<u>MEMORANDUM OPINION & ORDER</u>


        Pending is the motion to dismiss by defendant Bank of
America, N.A. ("Bank of America"), filed September 17, 2012.  Also
pending is the motion to dismiss by EverBank, as successor by
merger to defendant EverHome Mortgage Company ("EverBank"), filed
the same day.


        As an initial matter, Bank of America asserts that its
dismissal is required because the plaintiffs did not sufficiently
serve process.  <u>See</u> Fed. R. Civ. P. 12(b)(5).  It explains that
the plaintiffs incorrectly provided the Secretary of State with a
mailing address for a Bank of America training center in Florida
rather than Bank of America's headquarters in Charlotte, North
Carolina.  The plaintiffs respond that they perfected service when

they served the first amended complaint.  The website for the Secretary of State confirms that Bank of America received service on September 18, 2012, at 10:52 a.m., with Eleanor McCoy as the recipient.  The Clerk is directed to file the Secretary of State receipting information transmitted to her today.

### I. Background

This case arises from an allegedly predatory loan by Bank of America to plaintiffs Jollee Lenhart and Tamara Ousley. The following allegations of fact are taken from the plaintiffs' first amended complaint.

Ms. Lenhart is a single woman.  Compl. ¶ 2.  She served in the United States Navy and was an auto mechanic until she became disabled from post-traumatic stress disorder in 2006.  Id. She lives on VA disability benefits at her home in Union, West Virginia, within Monroe County.  Id.  The home secures the loan which is the subject of this action.  Id.  Ms. Ousley is Ms. Lenhart's sister and lives in the same home.  Id.  Like Ms. Lenhart, Ms. Ousley is single and disabled, although the record does not specify the nature of her disability.  Id.  The plaintiffs are co-owners of the home and co-borrowers on the loan.

Bank of America is a national bank, which does business in the Southern District of West Virginia and has a principal place of business in Charlotte, North Carolina.  Id. ¶ 3.

2

EverBank is a Florida company, which does business in the Southern District of West Virginia and has a principal place of business in Jacksonville, Florida.  Id. ¶ 4.  Bank of America was the originator of the plaintiffs' loan, and EverBank is the current servicer.  Id. ¶¶ 3-4.  John Doe Holder is the unknown holder of the loan.  Id. ¶ 5.

The plaintiffs purchased their home in or around 2000, taking out a mortgage from an unnamed lender.  Id. ¶ 6.  In 2009, the plaintiffs contacted Bank of America about refinancing the home.  Id. ¶ 7.  On or around September 5, 2009, Bank of America provided plaintiffs with a good faith estimate, a "Lock-in-Agreement," and other disclosures indicating that Bank of America would originate a thirty-year fixed rate loan with monthly payments of $909.78.  Id. ¶ 8.  Bank of America represented to the plaintiffs that there would be no out-of-pocket closing costs.  Id. ¶ 9.

On or around January 8, 2010, Bank of America sent an attorney to the plaintiffs' home to close the loan.  Id. ¶ 10.  The plaintiffs contend that the closing was rushed and that the closing agent insufficiently explained the documents.  Id. ¶ 11.  The closing agent informed the plaintiffs that they would have to tender $3,002.75 to close the loan.  Id. ¶ 12.  The complaint does not state whether the plaintiffs paid this amount.  The closing

agent refused the plaintiffs' request for a copy of the loan documents.  Id. ¶ 13.  He explained that providing the documents before Bank of America signed and notarized them would be unlawful.  Id.

On an unspecified date after the closing, Bank of America contacted the plaintiffs to notify them they would need to tender an "additional" approximately $3,000 to "close" the loan. Id. ¶ 16.  The plaintiffs paid the funds without receiving an explanation of their purpose.  Id.  They made payments on the loan through automatic deductions from their bank account and discovered that the monthly payment was $1,284.25, rather than the previously disclosed $909.78.  Id. ¶ 17.  They repeatedly contacted Bank of America about the increased payment and requested copies of the loan documentation, but Bank of America never provided an explanation or the documentation.  Id. ¶ 18. The plaintiffs assert that the higher-than-expected payment resulted from a "wildly inflated" hazard insurance policy on the home, which Bank of America insisted that the plaintiffs maintain. Id. ¶ 19.

Around April 5, 2012, Bank of America transferred the servicing of the loan to EverBank.[1]  Id. ¶ 20.  In letters dated April 19, 2012, the plaintiffs requested from Bank of America and

---

[1] EverBank provides documentation indicating that Bank of America did not transfer servicing until April 26, 2012.  See EverBank's Reply Supp. Mot. Dismiss Ex. 10.

EverBank a payment history and the name of the holder of their loan.  Id. ¶ 21.  The letters also instructed that all future communications should be directed to counsel.  Id.  The defendants received the letters on April 25, 2010.  Id.  EverBank, however, continued to contact the plaintiffs directly in attempting to collect a debt.  Id. ¶ 22.

By letters dated May 24, 2012, the plaintiffs requested rescission of the loan transaction and directed that communications regarding such arrangements be made to their counsel.  Id. ¶ 23.  Bank of America received the letter on May 30, 2012, and EverBank received the letter on May 29, 2012.  Id. The defendants acknowledged receipt of the letters, but offered no substantive response to the rescission request.

On June 29, 2012, the plaintiffs filed this action in the Circuit Court of Kanawha County, West Virginia.  On August 8, 2012, EverBank removed the action to federal court.

In their first amended complaint, filed September 2, 2012, the plaintiffs "reaffirm their cancellation," by which they appear to assert their right to rescission.  Id. ¶ 24.  They state that they are prepared to tender "should Defendants effect rescission of the transaction consistent with the Court's equitable powers to modify the rescission process."  Id. ¶ 26. The plaintiffs also assert that, to date, they have never received

material disclosures or notice of a three-day rescission period.
Id. ¶ 25.  The plaintiffs represent that they "have suffered fear
of loss of home, damages to credit and annoyance and
inconvenience."  Id. ¶ 27.

The first amended complaint alleges five counts: Count
I, violation of the Truth in Lending Act ("TILA"), 15 U.S.C.
§ 1635, by failing to properly respond to plaintiffs' notice of
cancellation; Count II, violation of TILA and Regulation Z, 12
C.F.R. § 226.23(b), by failing to provide required disclosures and
notice of the right to rescind; Count III, unconscionable
inducement; Count IV, illegal debt collection in violation of the
West Virginia Consumer Credit Protection Act ("WVCCPA"), W. Va.
Code § 46A-2-128(e); and Count V, violation of TILA, 15 U.S.C.
§ 1641(f)(2), by failing to provide the name, address, and contact
information for the holder of plaintiffs' loan when requested.

On September 17, 2012, the defendants filed the pending
motions, asserting the various grounds for dismissal that are set
forth below.

## II. The Governing Standard

Under Federal Rule of Civil Procedure 8(a)(2), a
complaint must contain "a short and plain statement of the claim
showing that the pleader is entitled to relief."  Rule 12(b)(6)
correspondingly permits a defendant to challenge a complaint when

it "fail[s] to state a claim upon which relief can be granted."
Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide
"'fair notice of what the . . . claim is and the grounds upon
which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545
(2007) (alternation in original) (quoting Conley v. Gibson, 355
U.S. 41, 47 (1957)); see also Anderson v. Sara Lee Corp., 508 F.3d
181, 188 (4th Cir. 2007). "To survive a motion to dismiss, a
complaint must contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its face.'"
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550
U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d
380, 386 (4th Cir. 2009). Facial plausibility exists when the
court is able "to draw the reasonable inference that the defendant
is liable for the misconduct alleged." Iqbal, 566 U.S. at 678
(quoting Twombly, 550 U.S. at 556). The plausibility standard "is
not akin to a 'probability requirement,'" but it requires more
than a "sheer possibility that a defendant has acted unlawfully."
Id. (quoting Twombly, 550 U.S. at 556).

In assessing plausibility, the court must accept as true
the factual allegations contained in the complaint, but not the
legal conclusions. Id. "Threadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do not

suffice." <u>Id.</u>  The determination is "context-specific" and requires "the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 679.

### III. Discussion

Under TILA, borrowers have three business days to rescind a consumer loan in which the lender has acquired a security interest in the borrower's principal dwelling.  15 U.S.C. § 1635(a).  The period is timed from the consummation of the transaction or the lender's delivery of the required forms, information, and material disclosures, whichever is later.  <u>Id.</u> The disclosures must include two copies of a separate document that gives the borrower notice of the right to rescind.  12 C.F.R. § 226.23(b)(1-2).  If the disclosure forms are never delivered, the right to rescind expires three years after the date of consummation or upon the sale of the property.  15 U.S.C. § 1635(f).  Section 1635(b) states that "[w]ithin 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." <u>Id.</u> § 1635(b).

Section 1640(a) of TILA provides for actual and statutory damages against "any creditor who fails to comply with

8

any requirement imposed under this part [relating to credit transactions], including any requirement under section 1635." For credit transactions that are "secured by real property or a dwelling," statutory damages range from $400 to $4,000. Id. § 1640(a)(2)(A)(iv).

A.   The Statute of Limitations for Civil Damages Under TILA

     The defendants assert that TILA's statute of limitations bars the plaintiffs' claims for statutory damages in TILA Counts I, II, and V.  Bank of Am.'s Mem. Supp. Mot. Dismiss 4-5; EverBank's Mem. Supp. Mot. Dismiss 7-8.  An action for civil damages under TILA "may be brought . . . within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e). Since the plaintiffs closed their loan on January 8, 2010 and did not file the present action until June 29, 2012, the defendants argue that the limitations period has expired.

     The plaintiffs do not dispute that the limitations period has elapsed, but they argue that they may nonetheless assert the time-barred penalties and damages as a set-off.  Pl.'s Opp'n Mot. Dismiss 12-13.  Section 1640(e) provides that the limitations period "does not bar a person from asserting a violation . . . in an action to collect the debt . . . as a matter of defense by recoupment or set-off in such action."  15 U.S.C. § 1640(e).  By its plain language, this provision exempts a set-

9

off claim from the statute of limitations only when the claim is raised as a defense or counterclaim to a creditor's debt-collection action.  See Moor v. Travelers Ins. Co., 784 F.2d 632, 634 (5th Cir. 1986).  The plaintiffs, nevertheless, argue that because West Virginia is a non-judicial foreclosure state, they "would have no opportunity to assert the set-off without filing an affirmative action" and should be entitled to the set-off.  Pl.'s Opp'n Mot. Dismiss 12-13.  Whether the plaintiffs will have an opportunity in this action to assert set-off remains to be seen. The issue is not one that needs to be resolved at the motion to dismiss stage.

B.   Disclosures and the Right to Rescission

Count II of the first amended complaint asserts that the defendants violated TILA and Regulation Z by failing to provide the plaintiffs with proper written notice of their right to rescind.  See 15 U.S.C. § 1635; 12 C.F.R. § 226.23(b)(1) ("In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind . . . .").  The plaintiffs allege further violations arising from the defendants' failure to provide disclosures in a form that the plaintiffs could keep and the defendants' failure to delay performance of the loan transaction until the expiration of the rescission period.  See 12 C.F.R. §

10

226.23(c) ("Delay of creditor's performance.  Unless a consumer waives the right of rescission . . . , no money shall be disbursed other than in escrow, no services shall be performed and no materials delivered until the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded.").  The plaintiffs request rescission, actual and statutory damages for the disclosure violations, and attorney fees, litigation expenses, and costs.  They assert that they have timely exercised their right to rescind because, without proper disclosure, the rescission period continues for three years.  <u>See</u> 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a)(3).

1.

EverBank first argues for Count II's dismissal because its foundation -- that the plaintiffs did not receive TILA disclosures or notice of the right to rescission -- is contradicted by an acknowledgement of receipt.  EverBank's Mem. Supp. Mot Dismiss 5.  Both Ms. Lenhart and Ms. Ousley signed a form stating that they "acknowledge receipt of two copies of <u>NOTICE of RIGHT TO CANCEL</u> and one copy of the Federal Truth in Lending Disclosure Statement."  EverBank Mot. Dismiss Ex. 2.  The plaintiffs respond that the allegations in their complaint constitute adequate evidence to support the claim, notwithstanding the acknowledgement.

11

The plaintiffs are correct.  A borrower's written acknowledgement of receipt of disclosures or documents mandated by TILA creates a rebuttable presumption that delivery was made.  See 15 U.S.C. § 1635.  Only a minimal evidentiary showing is necessary to overcome the presumption at the pleadings stage.  Balderas v. Countrywide Bank, N.A., 664 F3d 787, 790 (9th Cir. 2011) ("This presumption will no doubt be very valuable to Countrywide when the trier of fact is called on to decide whether the Balderases did or did not get proper TILA notice.  But evidentiary presumptions 'are inappropriate for evaluation at the pleadings stage.'" (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (Supp. 2011))).  The plaintiffs' allegations adequately counter the presumption at this stage, and the acknowledgement form does not mandate dismissal.  See id.  ("The Balderases allege in their complaint that they did not, in fact, get a properly prepared notice.  If they testify to that effect at trial, the trier of fact could believe them, despite their signed statement to the contrary.").

2.

EverBank next contends that rescission is inappropriate because the plaintiffs have failed to allege facts showing their ability to tender the loan proceeds.  EverBank's Mem. Supp. Mot. Dismiss 5.  The plaintiffs have alleged that they "are prepared to

12

tender should Defendants effect rescission of the transaction consistent with the Court's equitable powers to modify the rescission process."  Compl. ¶ 26; see also id. ¶¶ 31, 36 ("Plaintiffs are prepared to tender but seek equitable modification of their tender obligation.").

EverBank asserts that the plaintiffs are attempting to rest their ability to tender "on how much the court equitably modifies [their] tender obligation."  EverBank's Mem. Supp. Mot. Dismiss 6.  While EverBank acknowledges that the court can modify procedural requirements respecting tender, it argues that the court has no power to modify the amount to be tendered and, further, that such a modification would defeat the purpose of rescission and be inequitable.  Id. (citing 15 U.S.C. § 1635(b) ("The procedures prescribed by this section shall apply except when otherwise ordered by a court.")).  EverBank also argues that the plaintiffs have "alleged no facts, let alone plausible facts" demonstrating their ability to tender.  Id. at 7.  It particularly highlights the lack of allegations regarding household income or assets.  EverBank's Reply Supp. Mot. Dismiss 6.

Our court of appeals has held that "when rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be

assured of receiving its legal due." Am. Mortg. Network, Inc. v. Shelton, 486 F.3d 815, 820 (4th Cir. 2007) (quoting Power v. Sims and Levin, 542 F.2d 1216, 1222 (4th Cir. 1976)); see also Sherzer v. Homestar Mortg. Servs., 707 F.3d 255, 265 n.7 (3d Cir. 2013) ("[A] notice of rescission is not effective if the obligor lacks either the intention or the ability to perform, i.e., repay the loan.").

        The question presented here is whether the plaintiffs, who have alleged intention to tender, must also allege ability to tender as a pleading prerequisite.  The court is of the view that ability to tender should be treated as a matter for consideration in the court's exercise of its equitable powers respecting rescission rather than as a pleading requirement.  See Sanders v. Mountain Am. Fed. Credit Union, 689 F.3d 1138, 1144 (10th Cir. 2012) ("Although the rescinding consumer need not plead an ability to repay the proceeds of the loan, the district court may nevertheless, in an appropriate case, use its equitable powers to protect a creditor's interests during the TILA rescission process."); Moore v. Wells Fargo Bank, N.A., 597 F. Supp. 2d 612, 616-17 (E.D. Va. 2009) ("[Defendant] failed to cite any authority indicating that a Plaintiff seeking TILA recision is required to conclusively establish her ability to tender through her Complaint and it is unlikely that any such case law exists as such a

requirement appears in conflict with Federal Rule of Civil Procedure 8(a) and <u>Bell Atlantic</u>.").[2]

Inasmuch as it is not clear at this stage that the plaintiffs -- who allege intention to tender and who still own and retain the value of their home that is subject to the mortgage -- lack the ability to tender, it is inappropriate at this juncture to dismiss their rescission claim for want of allegations respecting ability to tender. The court can, subsequent to the pleadings stage, exercise its equitable powers to deny enforcement of an otherwise warranted rescission if the plaintiffs then appear unable to tender. EverBank's motion to dismiss Count II on this ground is denied. Bank of America's motion to dismiss Count II is also denied.

3.

Regarding damages for failing to provide disclosures, EverBank argues that it cannot be liable because, as the plaintiffs' complaint acknowledges, it was not the original

---

[2] **EverBank cites the <u>Parham</u> case in which the district court, in dictum, first expressed its opinion that the plaintiff was obligated to "demonstrate[] a 'plausible' ability to tender" at the pleadings stage, and then not only found that the plaintiff "had put forth a sufficient offer of tender to survive a motion to dismiss," but granted the motion to dismiss on other grounds. <u>Parham v. HSBC Mortg. Corp.</u>, 826 F. Supp. 2d 906, 911 (E.D. Va. 2011), <u>aff'd</u>, <u>Parham v. HSBC Mortg. Corp. (USA)</u>, 2012 WL 1655391 (4th Cir. May 11, 2012) (<u>per curiam</u>) (unpublished). The one-paragraph affirmance by the court of appeals lends no support to EverBank's contention.**

creditor and only later gained an interest in the loan. EverBank's Mem. Supp. Mot Dismiss 7.  It then argues that it cannot be liable as an assignee where the violations were not apparent on the face of the mortgage loan documents.  See 15 U.S.C. § 1641(a) (permitting assignee liability for civil damages "only if the violation . . . is apparent on the face of the disclosure statement" or "the assignment was involuntary"). EverBank asserts that because the plaintiffs signed a form acknowledging receipt of the required notice and disclosures, any alleged violations do not appear on the face of the documents. While, at the pleadings stage, the signed acknowledgement form alone does not suffice to relieve EverBank of responsibility, the plaintiffs have failed to allege any defects apparent on the face of the loan documents.  The court thus dismisses the plaintiffs' claims for statutory damages against EverBank arising from the alleged nondisclosure.[3]

C.   Statutory Damages for the Refusal to Rescind

        Count I seeks actual and statutory damages, as well as attorney fees and costs, for the defendants' failure to comply with the plaintiffs' May 24, 2012 notice of cancellation.  Damages

---

[3] The court notes that EverBank's status as an assignee does not affect the plaintiffs' right to rescission.  See 15 U.S.C. § 1641(c) ("Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation.").

may be awarded where a creditor "fails to comply with any requirement imposed under . . . section 1635." 15 U.S.C. § 1640(a). The court thus must consider whether it was a "requirement" of § 1635 that the defendants execute rescission in response to the plaintiffs' notice. EverBank contends, as a matter of law, that it was not. It argues that there can be no TILA violation because the notice of cancellation did not automatically trigger an obligation to rescind. EverBank's Mem. Supp. Mot. Dismiss 4. EverBank asserts that any obligation to "unwind the transaction" vests only after the plaintiffs' right to rescission has been adjudicated. Id. (citing Bradford v. HSBC Mortg. Corp., 838 F. Supp. 2d 424, 429 (E.D. Va. 2012) ("[O]nly after a court recognizes that the borrower is entitled to rescission does § 1635(b) impose any affirmative obligation on a lender.")).

EverBank is correct that a "unilateral notification of cancellation" may not "automatically void the loan contract." Shelton, 486 F.3d at 821. If that were not the case, "a borrower could get out from under a secured loan simply by claiming TILA violations, whether or not the lender had actually committed any." Id. at 821 (quoting Yamamoto v. Bank of N.Y., 329 F.3d 1167, 1172 (9th Cir. 2003)).

Nevertheless, the absence of an automatic avoidance requirement does not mean that a creditor is entitled to refuse rescission until so ordered by a court.  A borrower may properly exercise the right to rescind by letter without first obtaining a court order.  See Gilbert v. Residential Funding LLC, 678 F.3d 271, 277-78 (4th Cir. 2012) ("Simply stated, neither 15 U.S.C. § 1635(f) nor Regulation Z says anything about the filing of a lawsuit, and we refuse to graft such a requirement upon them."). The creditor can then be liable for damages and penalties under § 1640 if a court finds that the creditor improperly refused rescission.  See id. at 274, 278-79 (considering and affirming as timely a statutory damages claim stemming from the creditor's refusal to honor a right to rescind, where the creditor received notice of rescission nearly three years after the loan's origination); Belini v. Wash. Mut. Bank, FA, 412 F.3d 17, 25 & n.3 (1st Cir. 2005) ("[R]escission is not automatic when a notice of rescission is sent, but a creditor can still be held liable for wrongfully refusing to rescind when asked to do so by a debtor.").

Bank of America argues that the plaintiffs did not appropriately exercise their right to rescind the loan because the May 24, 2012 rescission letter failed to allege tender or make reasonable assurances thereof.  Bank of Am.'s Mem. Supp. Mot. Dismiss 5-6.  As discussed above in the context of Count II's claim for rescission, the plaintiffs under the circumstances of

this case are not obligated to allege their ability to tender.
The court likewise concludes that the plaintiffs need not allege
their ability to tender in the context of a § 1640 claim for
damages.

        The plaintiffs have alleged the proper exercise of their
right to rescind as well as the improper denial of that right by
the defendants.  At this stage, that is enough.  See Gilbert, 678
F.3d at 277 ("At [the pleadings] stage of the litigation, we are
not concerned with whether the contract has been effectively
voided.").  If it is subsequently shown that the plaintiffs failed
to make reasonable assurances of tender, then pursuant to Shelton
Bank of America's denial of rescission may be deemed justified
and, accordingly, damages under § 1640 will be unavailable.
Shelton, 486 F.3d at 817, 820-21 (concluding, at the summary
judgment stage, that the lender was not obligated to rescind the
loan transaction where the borrower appeared unable to tender).
The motions to dismiss of EverBank and Bank of America are denied
as to Count I.

D.   Disclosure of Loan Holder Information

        Count V alleges that the defendants violated TILA by not
responding to the plaintiffs' April 19, 2012 letters requesting
the name, address, and contact information of the holder of the
loan.  See 15 U.S.C. § 1641(f)(2).  TILA provides that "[u]pon

written request by the obligor, the <u>servicer</u> shall provide the obligor . . . with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." <u>Id.</u> (emphasis added).  TILA defines "servicer" by reference as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such a person also services the loan)."  12 U.S.C. § 2605(i)(2), <u>cited in</u> 15 U.S.C. § 1641(f)(3).

Bank of America seeks dismissal on the ground that it was not the loan servicer at the time it received the plaintiffs' letter and was not required to respond to plaintiffs' request. Bank of Am.'s Mem. Supp. Mot. Dismiss 6.  As Bank of America points out, the plaintiffs admit in their complaint that EverBank was the servicer of the loan as of April 5, 2012.  Compl. ¶ 20. In their response, the plaintiffs agree and consequently withdraw their Count V claim against Bank of America.  Pl.'s Opp'n Mot. Dismiss 18 n.4.

EverBank seeks dismissal of Count V arguing that the plaintiffs addressed the April 19, 2012 letter only to Bank of America.  Mem. Supp. Mot. Dismiss 10; <u>id.</u> Ex. 4.  The plaintiffs' complaint, however, alleges that separate letters were sent to the two defendants.  Compl. ¶ 21.  In their response, the plaintiffs attach a copy of, and receipt confirmation for, an April 19, 2012

letter addressed to EverBank Mortgage.  Pl.'s Opp'n Mot. Dismiss
Ex. B.  Count V thus adequately states a claim against EverBank.

     EverBank makes two additional arguments in its reply:
that it was not the servicer when it received the letter on April
25, 2012 and that it nonetheless complied with the plaintiffs'
request.  EverBank's Reply Supp. Mot. Dismiss 16.  Respecting
whether it was the servicer, EverBank attaches two documents to
its reply: (1) a notice from Bank of America to the plaintiffs
dated April 3, 2012 stating that "[b]eginning April 26, 2012, your
new servicer will be [EverBank] Mortgage" and (2) regarding its
provision of the requested information, a "Notice of Assignment,
Sale or Transfer of Mortgage Loan" sent to the plaintiffs and
dated May 4, 2012.  Id. Ex. 10, 11.

     The court finds that these two documents are not
properly before it at this time.  "[A]s a general rule extrinsic
evidence should not be considered at the 12(b)(6) stage . . . ."
Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212,
234 (4th Cir. 2004).  A court may make an exception where the
document "was integral to and explicitly relied on in the
complaint and [if] the plaintiffs do not challenge its
authenticity."  Id. (alternation in original) (quoting Phillips v.
LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)).  Under those
circumstances, the "primary problem raised by looking at documents

outside the complaint -- lack of notice to the plaintiffs -- is dissipated.'" Id. (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).

EverBank fairly asserts that these documents are central to the claim because the plaintiffs must prove that EverBank had "some interest in the mortgage loan at the time she sent her letter." EverBank's Reply Supp. Mot. Dismiss 17. EverBank, however, has first attached these two documents not to its motion to dismiss but rather to its reply to which plaintiffs are not expected to respond absent permission by the court. EverBank's dismissal as to Count V is thus unwarranted at this juncture.

E.    Unconscionable Inducement

Count III alleges that the loan is unconscionable in its terms, was induced by unconscionable conduct, and is therefore not enforceable.[4]  The plaintiffs assert that the loan was unconscionable because they are unsophisticated consumers and did not understand the details of the transaction.  Compl. ¶ 39. Respecting improper conduct, they emphasize the hurried closing of the loan, with inadequate discussion, Bank of America's failure to provide loan documentation, and misrepresentations about the

---

[4] EverBank asserts that Count III states no claim against it. Since the plaintiffs' unconscionable inducement allegations concern the loan's origination and do not mention EverBank or any conduct to which EverBank was party, the court agrees.  Count III is accordingly dismissed as to EverBank.

monthly payment and out-of-pocket costs.  Id. ¶ 40.  The
plaintiffs offer the monthly payment and closing costs as examples
of "several substantively unfair terms" contained in the loan.
Id. ¶ 41.

  Section 46A-2-121 of the WVCCPA provides the following
instructions respecting unconscionability:[5]

  (1) With respect to a transaction which is or gives rise
  to a consumer credit sale or consumer loan, if the court
  as a matter of law finds:

    (a) The agreement or transaction to have been
    unconscionable at the time it was made, or to have
    been induced by unconscionable conduct, the court
    may refuse to enforce the agreement, or

    (b) Any term or part of the agreement or
    transaction to have been unconscionable at the time
    it was made, the court may refuse to enforce the
    agreement, or may enforce the remainder of the
    agreement without the unconscionable term or part,
    or may so limit the application of any
    unconscionable term or part as to avoid any
    unconscionable result.

  (2) If it is claimed or appears to the court that the
  agreement or transaction or any term or part thereof may
  be unconscionable, the parties shall be afforded a
  reasonable opportunity to present evidence as to its
  setting, purpose and effect to aid the court in making
  the determination.

W. Va. Code § 46A-2-121.

---

[5] The plaintiffs assert that West Virginia common law also
provides a claim for unconscionable inducement.  Pl.'s Opp'n Mot.
Dismiss 13.  Count III cites § 46A-2-121 with respect to a request
for civil penalties but does not otherwise specify whether
unconscionability is asserted under the WVCCPA or the common law.

The principle of unconscionability is "the prevention of oppression and unfair surprise and not the disturbance of reasonable allocation of risks or reasonable advantage because of superior bargaining power or position."  Orlando v. Fin. One of W. Va., Inc., 179 W. Va. 447, 369 S.E.2d 882, 885 (1988) (citation omitted).  The test for unconscionability is

> whether, in the light of the background and setting of the market, the needs of the particular trade or case, and the condition of the particular parties to the conduct or contract, the conduct involved is, or the contract or clauses involved are so one sided as to be unconscionable under the circumstances existing at the time the conduct occurs or is threatened or at the time of the making of the contract.

Arnold v. United Cos. Lending. Corp., 204 W. Va. 229, 235, 511 S.E.2d 854, 860 (1998) (quoting Orlando, 179 W. Va. at 450, 369 S.E.2d at 885).

In making that assessment, "'[t]he particular facts involved in each case are of utmost importance since certain conduct, contracts or contractual provisions may be unconscionable in some situations but not in others.'"  Id. at 235, 511 S.E.2d at 860 (quoting Orlando, 179 W. Va. at 450, 369 S.E.2d at 885). Accordingly the WVCCPA emphasizes the need for discovery in assessing unconscionability claims: "If it is claimed or appears to the court that the agreement or transaction or any term or part thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its setting,

purpose and effect to aid the court in making the determination."
W. Va. Code § 46A-2-121.

Bank of America first seeks to dismiss the plaintiffs'
unconscionable inducement claim as time-barred by the WVCCPA
statute of limitations, codified at § 46A-5-101.  Bank of Am.'s
Mem. Supp. Mot. Dismiss 8.  Section 46A-5-101, however, provides
that violations arising from consumer loans have a one-year
limitations period running from the "due date of the last
scheduled payment of the agreement."  The West Virginia Supreme
Court of Appeals applies the statute liberally and consistently
with that language.  See Dunlap v. Friedman's Inc., 213 W. Va.
394, 399, 582 S.E.2d 841, 846 (2003).  As there is no indication
that the plaintiffs' last scheduled payment occurred more than a
year prior to their filing suit, the claim is timely.

Bank of America next contends that the plaintiffs have
insufficiently pled a claim for unconscionable inducement.  Bank
of Am.'s Mem. Supp. Mot Dismiss 8.  It notes the absence of
allegations that the plaintiffs needed immediate financial
assistance or that they lacked meaningful alternatives.  It argues
that debtors "unsophisticated in financial matters" are
characteristic of any mortgage loan transaction.  Bank of America
thus asserts that the plaintiffs have failed to plead any

inequality in bargaining power beyond what is ordinarily present in mortgage loan situations.

The court finds plaintiffs' allegations to be sufficient.  Allegations concerning the plaintiffs' disability and lack of sophistication, the closing agent's misconduct and misrepresentations, and unfair terms as to the monthly payment and closing costs adequately indicate circumstances that "may be unconscionable."  That is all that § 46A-2-121 requires before the parties "shall be afforded a reasonable opportunity to present evidence."  The court thus cannot conclude that those allegations are insufficient without first allowing the parties to assemble that evidence.

Bank of America further argues that the plaintiffs, having signed loan documents, cannot claim unconscionability based on alleged misrepresentations that contradict the signed documents.  Bank of Am.'s Mem. Supp. Mot Dismiss 9-10.  Yet, where there is fraud or other wrongful conduct, a signing party will not necessarily be bound by the written instrument's terms.  See Hager v. Am. Gen. Fin., Inc., 37 F. Supp. 2d 778, 788 (S.D. W. Va. 1999) (citing Acme Food Co. v. Older, 61 S.E. 235, 244 (W. Va. 1908)).  As with the signed disclosure acknowledgement form, the plaintiffs' signatures on the loan documents may prove to be valuable evidence for Bank of America when the issue is presented

26

to the trier of fact.  The plaintiffs have adequately alleged their unconscionability claim.

F.    Illegal Debt Collection

Count IV alleges that EverBank violated WVCCPA § 46A-2-128(e) by attempting to collect payment by communicating directly with the plaintiffs despite knowing that plaintiffs were represented by counsel.[6]  Specifically, EverBank made four phone calls to the plaintiffs in late May and early June of 2012, and it sent a collection agent to the plaintiffs' home on June 21, 2012. Compl. ¶ 45.

EverBank argues that the WVCCPA debt collection claims are preempted by the federal Home Owners' Loan Act of 1933 ("HOLA") as well as by a regulation of the Office of Thrift Supervision ("OTS").  See 12 U.S.C. § 1461; 12 C.F.R. § 560.2 ("OTS hereby occupies the entire field of lending regulation for federal savings associations.").  In response, the plaintiffs argue that the Dodd-Frank Act precludes a preemption finding.  See 12 U.S.C. § 25b(b)(1)(A) ("State consumer financial laws are preempted, only if application of a State consumer financial law would have a discriminatory effect on national banks, in

---

[6] Bank of America seeks to dismiss this count on the ground that the plaintiffs have made no allegations against Bank of America regarding debt collection.  As the plaintiffs do not contest this assertion, dismissal of Count IV as to Bank of America is warranted.

27

comparison with the effect of the law on a bank chartered by that State.").

In <u>McCauley v. Home Loan Inv. Bank, F.S.B.</u>, 710 F.3d 551 (4th Cir. 2013), our court of appeals addressed HOLA preemption in the context of a mortgage contract, like that at issue here, which was entered into prior to the effective date of the Dodd-Frank Act.  It observed that the applicable HOLA regulation governing preemption was that which was in effect when the loan contract was entered into.  The same is thus true here.

The applicable regulation is 12 C.F.R. section 560.2. Subparagraph (b) of that provision sets forth, "without limitation," those aspects of loans that states are preempted from regulating generally by subparagraph (a).  The nature of the WVCCPA claim here does not fit within any of the preempted exemplars found in subsection (b).  Moreover, a claim under the WVCCPA is akin to a statutory tort claim.  As noted in <u>McCauley</u> respecting the tort of fraud in the fair-lending setting,

> allowing for fraud actions in the vein of McCauley's "would not change the regulatory landscape; rather, it would merely provide a means of redress for an alleged misdeed in this particular case."  As OTS concluded regarding a state deceptive practices statute,

>> [w]hile [it] may affect lending relationships, the impact on lending appears to be only incidental to [its] primary purpose.... There is no indication that the law is aimed at any state objective in conflict with the safe and sound regulation of federal savings

> associations, the best practices of thrift
> institutions in the United States, or any
> other federal objective identified in §
> 560.2(a). In fact, because federal thrifts are
> presumed to interact with their borrowers in a
> truthful manner[, the] general prohibition on
> deception should have no measurable impact on
> their lending operations.

OTS Op. Letter, Preemption of State Laws Applicable to
Credit Card Transactions, 1996 WL 767462, at *6 (Dec.
24, 1996).

> We thus conclude that because McCauley's state tort
> claim for fraud only incidentally affects lending, it is
> not preempted by HOLA or its implementing regulation.

McCauley, 710 F.3d at 558 (citation omitted); see id. ("McCauley's

complaint alleges an affirmative deception by the issuer of her

mortgage, an act outside the scope of § 560.2(b). See OTS Op.

Letter, Preemption of State Laws Applicable to Credit Card

Transactions, 1996 WL 767462, at *5 (Dec. 24, 1996) ('State laws

prohibiting deceptive acts and practices in the course of commerce

are not included in the illustrative list of preempted

laws in § 560.2(b).'").

     The same must be said respecting the plaintiffs' WVCCPA

claim.  It is not found in the subsection (b) nonexclusive

listing, it resides outside the preemptive scope of section

560.2(a) generally, and, moreover, it only incidentally -- if at

all -- affects lending.  It is, accordingly, ORDERED that

EverBank's motion to dismiss as to Count IV be, and hereby is,

denied.

IV.

Based upon the foregoing discussion, it is, accordingly,

ORDERED as follows:

1.   that Bank of America's motion to dismiss, filed
     September 17, 2012, be, and it hereby is, granted as set
     forth herein and denied in all other respects;

2.   that EverBank's motion to dismiss, filed September 17,
     2012, be, and hereby is, granted as set forth herein and
     denied in all other respects;

3.   that Count II be, and hereby is, dismissed as to claims
     for damages under § 1640 as to EverBank;

4.   that Count III be, and hereby is, dismissed as to
     EverBank;

5.   that Count IV be, and hereby is, dismissed as to Bank of
     America; and

6.   that Count V be, and hereby is, dismissed as to Bank of
     America.


The Clerk is directed to transmit copies of this order

to all counsel of record and any unrepresented parties.

ENTER:   April 29, 2013

John T. Copenhaver, Jr.
United States District Judge