UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JOLLEE LENHART, on her own behalf
and as power of attorney for
TAMARA OUSLEY,

      Plaintiffs,

v.                          Civil Action No. 2:12-cv-4184

EVERBANK, formerly known as
Everhome Home Mortgage Company,

      Defendants.


MEMORANDUM OPINION AND ORDER

      Pending is EverBank's motion for summary judgment, filed July 17, 2013.


I. Background

      This case arises from an allegedly predatory loan by Bank of America to plaintiffs Jollee Lenhart and Tamara Ousley. Ms. Lenhart is a single woman.  2d. Amend. Compl. ("Compl.") ¶ 2.  She served in the United States Navy and was an auto mechanic until she became disabled from post-traumatic stress disorder in 2006.  Id.  She lives on a fixed income of VA disability benefits.  Id.  Ms. Ousley is Ms. Lenhart's sister. Id.  Ms. Ousley is also single and disabled, suffering from bipolar disorder.  Ousley Dep. 15.  The sisters live together at their home in Union, West Virginia, within Monroe County.

Compl. ¶ 2.  The home secures the loan which is the subject of
this action.  Id.  The plaintiffs are co-owners of the home and
co-borrowers on the loan.  Id.  A September 10, 2009 appraisal
of the plaintiffs' Union, West Virginia parcel estimates its
value at $500,000.  Pls.' Opp'n EverBank's Mot. Summ. J.
("Opp'n") Ex. U.

        Bank of America is a national bank, which does
business in the Southern District of West Virginia and has a
principal place of business in Charlotte, North Carolina.
Compl. ¶ 3.  EverBank is a Florida company, which does business
in the Southern District of West Virginia and has a principal
place of business in Jacksonville, Florida.  Id. ¶ 4.  Bank of
America was the originator of the plaintiffs' loan, and EverBank
is the current servicer and holder of the loan.[1]  Id. ¶¶ 3-4.
Bank of America was originally a defendant in this action, but
the plaintiffs and Bank of America reached a settlement, and it
was dismissed from this action by order entered October 17,
2013.

        The plaintiffs purchased their home in 2000, taking
out a mortgage from an unnamed lender.  Id. ¶ 5.  In 2009, they

---

[1] Everhome Mortgage was "the name under which EverBank serviced
Plaintiffs' mortgage loans."  EverBank Mot. Summ. J. ¶ 4 n.3.
For simplicity, the court adopts EverBank's convention in
referring to both Everhome Mortgage and EverBank simply as
"EverBank".  Id.

contacted Bank of America about refinancing the home.  Id. ¶ 6.
On January 8, 2010, Bank of America sent Robert P. Dunlap, a
licensed attorney and notary public, to the plaintiffs' home to
close a loan.  Id. ¶ 9; Dunlap Aff. ¶ 1-2.  The plaintiffs
contend that the closing was rushed and that Mr. Dunlap
insufficiently explained the documents.  See Lenhart Dep. at 70.

They assert that they never received copies of the
material disclosures, notices of the right to cancel, or any
loan documentation at closing.  Opp'n 4.  Respecting the notice
of right to cancel, Ms. Lenhart offered the following testimony:

> Q. Do you remember receiving that document?
> A. I never received it.

Lenhart Dep. 67.  Ms. Ousley testified to the same:

> Q. Did you, in fact, receive two copies of the notice
> of right to cancel and one copy of the federal truth
> in lending disclosure?
> A. No.

Ousley Dep. 55.

Ms. Lenhart contends that Mr. Dunlap refused the
plaintiffs' request for a copy of the loan documents.  Lenhart
Dep. at 72.  She states in her deposition that he explained that
providing the documents before Bank of America signed and
notarized them would be unlawful:

> I had a question about why he told us he couldn't
> leave any of the documentation, that it was illegal
> for him to do so until it was notarized, and we would
> be sent copies, which never happened.  I had a

question about that, why wasn't I left documents that
I had just signed.

Id. at 72-73.  Mr. Dunlap disputes this account in his affidavit

testimony: "It is my practice and procedure, and it was so on

January 8, 2010, to leave with each borrower two copies of the

Notice Of Right To Cancel and with each borrower with [sic] one

copy of the Truth In Lending Statement."  See Dunlap Aff. ¶¶ 5,

9-10.

The plaintiffs made complaints to U.S. Senator John D.

Rockefeller, IV and the West Virginia Attorney General

maintaining that they had not received the loan documents.  A

letter from the plaintiffs to Wes Holden in Senator

Rockefeller's office dated April 5, 2012 notes among its

complaints that "Bank of America . . . has never given us loan

documents."  Opp'n Ex. E, at 4.  The plaintiffs' April 19, 2012

Consumer Mortgage Complaint to the West Virginia Attorney

General asserted that "[s]ince 2010 January the B of A Bank

never sent loan docets[sic] to us."  See Opp'n Ex. E. at 3.

Discovery revealed that Bank of America's file for the

plaintiffs' loan contains six unexecuted and five executed

notices of right to cancel.  Opp'n Ex. G.  The file also

contained four signed and four unsigned copies of the TILA

disclosures.  Id. Ex. H.  A handwritten note on a page of

4

instructions regarding closing documents states that "Alice
Irons said hold on to them."  Opp'n Ex. I.

Plaintiffs' expert Nina Simon, a Consumer Fellow with
the Consumer Financial Services Committee of the Business Law
Section of the ABA, states in her report that "[t]he existence
of so many signed and unsigned copies [of the notice of right to
cancel] in the files of both BANA and EverBank (EB) is atypical
and suggests that these Notices may never have been delivered."
Simon Rpt. 2, 12.  She opines that the handwritten note "may
also support that conclusion."  Id. at 12.  Similarly, she
concludes that "[t]he existence of so many signed and unsigned
TILA disclosures in the BANA file suggests these disclosures may
never have been delivered to the borrowers."  Id.  Ms. Simon
also states that two separate closing packets were generated and
mailed to the closing agent: one on January 8, 2010, the day of
the closing, and the other two days later on January 10, 2010.
Id. at 12 n.9.

On January 10 or 11, 2010, Bank of America contacted
the plaintiffs and told them that a $3,002.75 payment, of which
they had not been previously notified, was necessary to close
the loan.  Lenhart Dep. 79; Simon Rpt. 21.  Notes from Bank of
America's file suggest that the payment was inconsistent with
normal closing procedures -- for instance, the payment was not

mentioned in the closing instructions provided to the closing
agent.  Simon Rpt. 23.

On April 5, 2012, Bank of America assigned the loan to
EverBank, notifying the plaintiffs by letter of the assignment.
Opp'n Ex. M.  On April 26, 2012, EverBank became the loan's
servicer.  Id. Ex. P.  In letters dated April 19, 2012, the
plaintiffs requested from EverBank a payment history and the
name of the holder of their loan.  Id. Ex. N.  The letters also
instructed that all future communications should be directed to
counsel.  Id.  The defendants received the letters on April 25,
2010.  Id.  After receiving the letter, EverBank still contacted
the plaintiffs directly.  Compl. ¶ 21.  Specifically, on May 24
and 31 and June 2, 4, and 6, 2012, EverBank telephoned the
plaintiffs,[2] and on June 21, 2012, EverBank sent an agent to the
plaintiffs' home.  Id. ¶ 43; Mot. Summ. J. Ex. 1, at 18-22.

By letters dated May 24, 2012, the plaintiffs
requested rescission of the loan transaction and directed that
communications regarding such arrangements be made to their
counsel.  Opp'n Ex. S.  EverBank received the letter on May 29,
2012.  Id.  In a letter dated June 21, 2012, EverBank notified
Senator Rockefeller and the plaintiffs' counsel that it was
unable to process the rescission request as the rescission

---

[2] EverBank's records indicate that the June 2 call was made on
June 1.  Mot. Summ. J. Ex. 1., at 19.

period had expired.  Id. Ex. T.  It also disputed the
plaintiffs' claim that they had never received the necessary
disclosures.  Id.

       On June 29, 2012, the plaintiffs filed this action in
the Circuit Court of Kanawha County, West Virginia.  On August
8, 2012, EverBank removed the action to federal court.  The
second amended complaint ("the complaint"), filed May 29, 2013,
asserts six claims: Count I, violation of the Truth in Lending
Act ("TILA"), 15 U.S.C. § 1635, by failing to properly respond
to plaintiffs' notice of cancellation, for which plaintiffs seek
damages; Count II, violation of TILA and Regulation Z, 12 C.F.R.
§ 226.23(b), by failing to provide required disclosures and
notice of the right to rescind, for which the plaintiffs seek
rescission; Count III, unconscionable inducement (dismissed as
to EverBank by order entered April 29, 2013); and Count IV,
illegal debt collection in violation of the West Virginia
Consumer Credit Protection Act ("WVCCPA"), W. Va. Code § 46A-2-
128(e).  In their response to the pending motion, the plaintiffs
abandon and voluntarily dismiss two additional claims in the
complaint: Counts V and VI. [3] Opp'n 2.

       On April 29, 2013, the court entered a memorandum
opinion and order granting in part EverBank's motion to dismiss.

---

[3] Count VI was added in the second amended complaint.

Respecting EverBank, the order dismissed Count II as to claims
for statutory damages, and Count III in its entirety.  Thus,
three counts remain against EverBank: Count I, Count II as to
the request for rescission, and Count IV.

## II. The Governing Standard

A party is entitled to summary judgment "if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).  Material facts are
those necessary to establish the elements of a party's cause of
action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248
(1986).

A genuine issue of material fact exists if, in viewing
the record and all reasonable inferences drawn therefrom in a
light most favorable to the non-moving party, a reasonable
factfinder could return a verdict for the non-movant.  <u>Id.</u>  The
moving party has the burden of "'showing' — that is, pointing
out to the district court — that there is an absence of evidence
to support the nonmoving party's case."  <u>Celotex Corp. v.
Catrett</u>, 477 U.S. 317, 325 (1986).  If the movant satisfies this
burden, the non-movant must respond by showing specific,
admissible evidence that establishes the existence of all

elements essential to the case.  Fed. R. Civ. P. 56(c); <u>Celotex</u>,
477 U.S. at 322-23.  A party is entitled to summary judgment if
the record as a whole could not lead a rational trier of fact to
find in favor of the non-movant.  <u>Williams v. Griffin</u>, 952 F.2d
820, 823 (4th Cir. 1991).

### III. Discussion

        Under TILA, borrowers have three business days to
rescind a consumer loan in which the lender has acquired a
security interest in the borrower's principal dwelling.  15
U.S.C. § 1635(a).  The period is timed from the consummation of
the transaction or the lender's delivery of the required forms,
information, and material disclosures, whichever is later.  <u>Id.</u>
The disclosures must include two copies of a separate document
that gives the borrower notice of the right to rescind.  12
C.F.R. § 226.23(b)(1-2).  If the disclosure forms are never
delivered, the right to rescind expires three years after the
date of consummation or upon the sale of the property.  15
U.S.C. § 1635(f).  Section 1635(b) states that "[w]ithin 20 days
after receipt of a notice of rescission, the creditor shall
return to the obligor any money or property given as earnest
money, downpayment, or otherwise, and shall take any action
necessary or appropriate to reflect the termination of any
security interest created under the transaction."  <u>Id.</u>
§ 1635(b).

9

Section 1640(a) of TILA provides for actual and statutory damages against "any creditor who fails to comply with any requirement imposed under this part [relating to credit transactions], including any requirement under section 1635." For credit transactions that are "secured by real property or a dwelling," statutory damages are equal to twice the finance charge, but not less than $400 or more than $4,000.  Id. § 1640(a)(2)(A)(i,iv); see Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 60-65 (2004).

A "creditor" under TILA is defined as follows:

> The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g).  The plaintiffs rightly assert that Bank of America was a "creditor" in this case.  Compl. ¶ 3(b).  As to EverBank, the plaintiffs do not claim that it is a creditor. Nor could they, as the loan was sold to EverBank, and therefore it was not "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness."  15 U.S.C. § 1602(g) (emphasis added).  See Cetto v. LaSalle Bank N.A., 518 F.3d 263, 269 (4th

10

Cir. 2008). Instead, the plaintiffs allege, and EverBank concedes, that it is an "assignee" within the meaning of TILA § 1641, as the loan was transferred to EverBank. Compl. ¶ 4, EverBank Mot. Summ. J. ¶ 13.

Count II: Rescission

Count II seeks a declaration that the plaintiffs have properly cancelled their loan and the rescission of that loan. Compl. at 6-7. The plaintiffs assert that their right to rescind continued for three years due to the lack of required disclosures. They claim that the right "has now been appropriately exercised." Id. ¶ 33.

A. Protection as Assignee

EverBank contends that as an assignee it has no obligation to rescind under § 1635 because the alleged disclosure violation was not apparent on the face of the disclosure documents. Respecting the liability of assignees, TILA provides,

> Except as otherwise specifically provided in this subchapter, any civil action against a creditor for a violation of this subchapter . . . with respect to a consumer credit transaction secured by real property may be maintained against any assignee of such creditor only if—
>
> (A) the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction . . . .

15 U.S.C. § 1641(e).

Actions asserting rescission claims under § 1635, however, are one of the items for which the subchapter "otherwise specifically provide[s]." Id. Section 1641(c) states,

> Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation.

The protection accorded assignees respecting violations that are not apparent is therefore unavailable for § 1635 rescission claims. See, e.g., Ward v. Security Atlantic Mortg. Electronic Registration Systems, Inc., 858 F. Supp. 2d 561, 569-70 (E.D.N.C. 2012).

B. Validity of Rescission Request

EverBank contends that the plaintiffs are not entitled to rescission because there is no issue of material fact respecting whether they received the proper disclosures. Absent a disclosure violation, the plaintiffs had only a three-day window for rescission, which had long passed when they made their May 24, 2012 request.

EverBank specifically argues that the signed acknowledgements create a presumption of delivery that the

plaintiffs have failed to rebut, citing § 1635(c), which

provides:

> [W]ritten acknowledgment of receipt of any disclosures . .
> . does no more than create a rebuttable presumption of
> delivery thereof.

It maintains that the closing agent Robert Dunlap's affidavit

testimony further verifies that he delivered the appropriate

disclosures.  See Dunlap Aff. ¶¶ 5, 9-10.

In response, the plaintiffs point out that they have

both testified to having never received the documents.  See

Lenhart Dep. 67; Ousley Dep. 55.  They also point to evidence of

Bank of America's loan file and Ms. Simon's expert testimony

that certain aspects of the closing were irregular and that "so

many signed and unsigned" disclosures in the file "suggests that

the disclosures may never have been delivered."  Simon Rpt. 2,

12.

In its reply brief, EverBank attempts to elevate the

signed acknowledgments to the level of conclusive proof.  While

the plaintiffs have had no opportunity to further respond, it is

apparent that EverBank is not insulated by the conclusive proof

provision, 15 U.S.C. § 1641(b), which states:

> Except as provided in section 1635(c) of this title, in any
> action or proceeding by or against any subsequent assignee
> of the original creditor without knowledge to the contrary
> by the assignee when he acquires the obligation, written
> acknowledgement of receipt by a person to whom a statement
> is required to be given pursuant to this subchapter shall
> be conclusive proof of the delivery thereof and, except as

provided in subsection (a) of this section, of compliance
with this part. This section does not affect the rights of
the obligor in any action against the original creditor.

15 U.S.C. § 1641(b) (emphasis added).  That section, like

§ 1641(e) discussed above, contains an exception for rescission

claims.  It expressly states that it applies "[e]xcept as

provided in section 1635(c)", under which an acknowledgment of

reciept of disclosure creates only a rebuttable presumption.

Id.  EverBank's argument that this exception refers only to the

distinction between creditors and assignees is also untenable.

Whereas § 1641 addresses assignees, § 1635 pertains to

rescission claims and at no point specifies that it is limited

to actions against creditors.  Thus, the signed acknowledgment

of disclosures creates a rebuttable presumption, not conclusive

proof.  See Bryant v. Mortg. Capital Resource Corp., 197 F.

Supp. 2d. 1357, 1363 (N.D. Ga. 2002); In re Williams, 291 B.R.

636, 650 n.19 (Bankr. E.D. Pa. 2003).


        The plaintiffs have pointed to sufficient specific,

admissible evidence to create an issue of fact with regard to

the disclosures.[4]  As the plaintiffs have argued, their

deposition testimony is sufficient to overcome the presumption

---

[4] EverBank contends that Ms. Simon's expert opinion regarding the
"suggest[ion] that the disclosures may never have been
delivered" is inadmissible ipse dixit testimony.  Reply 11-12.
Even assuming that is true, Ms. Simon's general testimony
regarding what she recognizes as irregularities could cast doubt
on Mr. Dunlap's assertion that the closing followed standard
procedures, and lend some support to the plaintiffs' claims.

that they received the disclosures.  In a recent case, the Third
Circuit considered whether a district court erred "when it
"instructed the jury that '[i]n a TILA case, something more than
just the testimony of the borrower is needed to rebut the
presumption that she received two copies of the Notice.'"
Cappuccio v. Prime Capital Funding LLC, 649 F.3d 180, 189 (3rd
Cir. 2011).  The court concluded that the district court had
indeed erred:

> We have previously held that a single, non-conclusory
> affidavit or witness's testimony, when based on
> personal knowledge and directed at a material issue,
> is sufficient to defeat summary judgment or judgment
> as a matter of law.  This remains true even if the
> affidavit is "self-serving" in the sense of supporting
> the affiant's own legal claim or interests.

Id. at 189-90 (citation omitted).[5]  The plaintiffs have
sufficiently rebutted the presumption created by their signed
acknowledgement forms, and have created a triable issue of fact.

### C. Ability to Tender

With regard to ability to tender, the plaintiffs'
complaint states that they are prepared to tender "should
Defendants effect rescission of the transaction consistent with
the Court's equitable powers to modify the rescission process."

---

[5] In arguing to the contrary, EverBank cites the unpublished
decision of Sibby v. Ownit Mortg. Solutions, Inc, 240 F. App'x
713 (6th Cir. 2007).  Sibby, which affirmed the district court,
is inapt because the district judge awarded summary judgment
after the plaintiff, "by default, was held as admitting that she
did receive two copies of the Notice" due to her repeated
failure to comply with a request for admissions.  Id. at 716.

Id. ¶ 24.  EverBank contends that it is entitled to summary judgment on Count II because there is no evidence that the plaintiffs have the present ability to tender.  See American Mortg. Network, Inc. v. Shelton, 486 F.3d 815, 820-821 (4th Cir. 2007) ("The trial court, in exercising its powers of equity, could have either denied rescission or based the unwinding of the transaction on the borrowers' reasonable tender of the loan proceeds.").  EverBank emphasizes that the plaintiffs have no jobs, live on approximately $2,400 a month in disability income, and have limited assets apart from $10,000 that they state they have in a bank account.  Id.  EverBank estimates for purposes of its motion that "Plaintiffs would be required to pay approximately $132,000 to tender."  Mem. Supp. Mot. Summ. J. 10 n.5.  In its reply, EverBank cites a figure from the affidavit of Lorri Beltz, its Assistant Vice President: "As of July 1, 2013, the amount required for total payoff is $161,334.96."  Beltz Aff. 3.

The plaintiffs respond that they have "adequate financing options available to them," given that the total property appraised at $500,000 in 2009.  Opp'n 8; id. Ex U.  Ms. Lenhart states in her deposition testimony that the property "was appraised for 500 and some thousand dollars, so it shouldn't have been a problem to get a loan."  Lenhart Dep. 94.  See also Ousley Dep. 55 (agreeing "with [her] sister" that they

16

"would be able to provide the tender amount"). The court finds that the appraisal evidence sufficiently supports the plaintiffs' claimed ability to tender so as to raise an issue of material fact.[6]

      D. Equitable Considerations

      EverBank, nonetheless, contends that equitable considerations justify the court exercising its discretion to deny rescission. See Shelton, 486 F.3d at 819 ("[A]lthough the right to rescind is [statutory], it remains an equitable doctrine subject to equitable considerations." (quoting Brown v. Nat. Permanent Fed. Savings & Loan Ass'n, 683 F.2d 444, 447 (1982)). EverBank states that the plaintiffs "have lived in their home for nineteen months, rent and mortgage payment free." Mem. Supp. Mot. Summ. J. 11. Additionally, it asserts the plaintiffs have not paid their taxes and insurance premiums, which amount to over $10,000. Id. The plaintiffs state, though, that they have been "setting aside payments for the loan during the litigation" and now have approximately $10,000 in liquid assets. Opp'n 14. n.7 (citing Interrog. Resp., Mot.

_____

[6] The court rejects EverBank's argument that, given other lending factors such as creditworthiness, evidence of the plaintiffs' home value cannot alone establish their ability to secure a loan for purposes of summary judgment. The unpublished, per curiam opinion that EverBank cites addresses the circumstances in which a creditor can require a guarantor's signature under the Equal Credit Opportunity Act, and has no relevance to the TILA claims here. See Household Bank, Fed. Sav. Bank v. Carlton, 1993 WL 385132 at *4 (4th Cir. Sept. 30, 1993)).

Summ. J. Ex. 2, at 10).  And, as noted, the plaintiffs own and possess highly valued real estate that can potentially serve as a resource supplanting their ability to tender.

The equities at issue are not so plain and undisputed as to admit of resolution at this juncture.

Count I: Damages for Failure to Respond to Notice

Count I asserts that EverBank violated TILA § 1635 by not unwinding the loan transaction in response to the plaintiffs' May 24, 2012 rescission request.  Compl. ¶¶ 27-28. The plaintiffs seek their actual and statutory damages, pursuant to 15 U.S.C. § 1640(a), as well as attorney's fees and costs. Id. at 5.

EverBank argues that it cannot be held liable for damages even if the plaintiffs are ultimately found to have a valid rescission claim.  Relying again on 15 U.S.C. § 1641(e), it asserts that the denial of the rescission request was not improper because the underlying disclosure violation was not "apparent on the face of the disclosure statement[s]" it received.  Mem. Supp. Mot. Summ. J. 8.  As discussed with respect to Count II, § 1641 limits assignee liability except with regard to the "right to rescind."  See 15 U.S.C. § 1641(c); Little v. Bank of America, N.A., 769 F. Supp. 2d 954, 967 (E.D. Va. 2011).  Since Count I asserts not the right to rescind, but rather damages arising from the denial of that right, EverBank

is entitled to § 1641's protections.  <u>Little</u>, 769 F. Supp. 2d at

967.  There are no violations apparent on the face of the

disclosure statements from which EverBank could have concluded

that the plaintiffs did not receive the required disclosures.[7]

EverBank is thus not subject to damages for its failure to

effect rescission in response to the plaintiffs' May 24, 2012

request.  Summary judgment as to Count I is warranted.

Count IV: Illegal Debt Collection

Count IV alleges that EverBank violated the West

Virginia Consumer Credit and Protection Act ("WVCCPA") by

contacting the plaintiffs directly rather than communicating

with their lawyer.  The West Virginia Legislature enacted

section 46A-2-128 as a means to prohibit all debt collectors

from using "unfair or unconscionable means to collect or attempt

to collect any claim."  W. Va. Code § 46A-2-128.  One species of

that neutral and generally applicable consumer protection device

prohibits "[a]ny communication with a consumer whenever it

appears that the consumer is represented by an attorney and the

attorney's name and address are known . . . ."  <u>Id.</u> § 46A-2-

128(e).

_____

[7] The plaintiffs argue in a footnote that the disclosure
violation is apparent from the multiple signed and unsigned
forms in the loan file and Mr. Dunlap's handwritten note
regarding keeping the forms.  Such an inference, if tenable, can
hardly be deemed apparent and, in any event, is inconsistent
with "apparent on the face" as stated in the statute.  <u>See</u>
§ 1641(e)(2).

EverBank reiterates the argument advanced in its
motion to dismiss that section 46A-2-128(e) is preempted under
the federal Home Owners Loan Act ("HOLA").  The court previously
concluded that the plaintiffs' WVCCPA claim is not preempted
inasmuch as it is akin to a tort claim and "'only incidentally
affects lending.'"  See Lenhart v. Bank of America N.A., No.
2:12-4184, slip op. at 28-29 (quoting McCauley v. Home Loan Inv.
Bank, F.S.B., 710 F.3d 551, 558 (4th Cir. 2013)); see 12 C.F.R.
§ 560.2(c).

The HOLA implementing regulation provides that
"federal savings associations may extend credit as authorized
under federal law . . . without regard to state laws purporting
to regulate or otherwise affect their credit activities."  12
C.F.R. § 560.2(a).[8]  Subsection 560.2(b) provides the "types of
state laws preempted" and subsection 560.2(c) provides the

---

[8] The Dodd-Frank Act, effective July 2011, vacated
section 560.2 and created a statutory, and more restrictive,
preemption standard.  That statute is accompanied by a redrawn,
and compatibly narrowed, regulatory preemption scheme.  See 12
U.S.C. § 25b(b)(1)(A).  As noted in McCauley, the new Dodd-Frank
regulations are not retroactive.  McCauley, 710 F.3d at 554 n.2.

The court will address whether the three-step analysis
found in the now withdrawn regulation works a preemption of the
claim pled in Count IV.  In light of the outcome of that
approach, the court need not address a number of other issues
that might arise.  One such issue is the extent to which, if at
all, some weight should be given to the Dodd-Frank preemption
scheme as constituting a clarification of the law existing upon
enactment in assessing the proper scope of the now withdrawn OTS
regulation.

"types [that] are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations."  Id. § 560.2(b-c).

Within this statutory framework, the preemption analysis proceeds in three steps:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b).  If so, the analysis will end there; the law is pre-empted. If the law is not covered by paragraph (b), the next question is whether the law affects lending.  If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted.  This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c).  For these purposes, paragraph (c) is intended to be interpreted narrowly.  Any doubt should be resolved in favor of preemption.

McCauley, 710 F.3d at 555 (quoting Lending & Investment, 61 Fed. Reg. at 50966–67).

Section 560.2(b) provides, inter alia, that "the types of state laws preempted by paragraph (a) . . . include, without limitation, state laws purporting to impose requirements regarding: . . . (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." (emphasis added).  EverBank asserts that section 46A-2-128(e) is a loan servicing requirement and thus categorically preempted at step one.  See McCauley, 710 F.3d at 556 (observing that a common-law unconscionability claim concerning "the allegedly hurried closing falls squarely within Ocean Bank's

'[p]rocessing, origination, servicing, sale or purchase of, or
investment or participation in, mortgages'" (quoting 12 C.F.R. §
560.2(b)(10)).

      While the court of appeals in McCauley concluded that
the unconscionability claim in that case was preempted at step
one, it additionally concluded that an accompanying fraud claim
was not:

> In alleging fraud, [plaintiff] complains not of the
> loan-to-value ratio per se, but of being misled
> regarding a component of that ratio.  Similarly, the
> alleged intentionally inflated appraisal amounts to
> more than a simple failure to disclose or an
> irregularity in the origination of a mortgage.
> Rather, McCauley's complaint alleges an affirmative
> deception by the issuer of her mortgage, an act
> outside the scope of § 560.2(b).  See OTS Op. Letter,
> Preemption of State Laws Applicable to Credit Card
> Transactions, 1996 WL 767462, at *5 (Dec. 24, 1996)
> ("State laws prohibiting deceptive acts and practices
> in the course of commerce are not included in the
> illustrative list of preempted laws in § 560.2(b).").

McCauley, 710 F.3d at 555 (emphasis added).

      A similar analysis applies here.  In alleging a
violation of section 46A-2-128(e), plaintiffs are not
challenging the right to service the loan generally or even
EverBank's right to make contact concerning the debt.  Section
46A-2-128(e) merely directs to whom such a communication should
be made -- a lawyer -- when the plaintiff is represented by
counsel.  This tailored consumer-protection effort by the
Legislature was designed to avoid a skilled and deceptive

collector from accomplishing an end-run around counsel to the client's potentially severe detriment.

The Legislature appears to have concluded that a debt collector contacting a debtor it knows to be represented by counsel often constitutes more than just a simple servicing device.  It could represent an affirmative, and deceptive, effort to collect from a consumer in a manner that his lawyer would know to be unlawful under federal or non-preempted state law.  Seen in this light, the narrowly drawn section 46A-2-128(e) is properly understood as a state law prohibiting deceptive acts and practices in the course of commerce which, as noted by the opinion letter quoted above in McCauley, are not included within section 560.2(b).  See also McCauley, 710 F.3d at 555 ("When interpreting HOLA and its implementing regulation, . . . we are cautioned that they are not intended to 'preempt state laws that establish the basic norms that undergird commercial transactions.' OTS Op. Letter, Preemption of State Laws Applicable to Credit Card Transactions, 1996 WL 767462, at *5 (Dec. 24, 1996)."); id. at 556 (noting that "state laws establishing a basic framework for commerce" include "laws prohibiting deceptive practices.").

Akin to the non-preempted fraud claim in McCauley, the section 46A-2-128(e) statutory tort claim in Count IV only incidentally affects lending operations.  It is thus not

23

preempted by HOLA or its implementing regulations.  The court declines to revisit the conclusion earlier reached in the case respecting EverBank's motion to dismiss Count IV.  Inasmuch as genuine issues of material fact remain concerning whether the contacts in this case were designed to collect or attempt to collect a debt, EverBank's motion for summary judgment on Count IV is denied.

### IV. Conclusion

For the reasons herein, it is ORDERED that EverBank's motion for summary judgment be, and it hereby is, GRANTED as to Counts I, V, and VI, and DENIED as to Count II and Count IV.

The Clerk is directed to transmit copies of this Order to all counsel of record and any unrepresented parties.

ENTER:  October 23, 2013

John T. Copenhaver, Jr.
United States District Judge